UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

**MELISSA PEDDIE,**

    **Plaintiff,**

v.

**CALHOUN-LIBERTY HOSPITAL ASSOCIATION, INC. d/b/a CALHOUN-LIBERTY HOSPITAL,**

    **Defendant.**
_____/

**CASE NO.**

## COMPLAINT

Plaintiff, MELISSA PEDDIE, hereby sues Defendant, CALHOUN-LIBERTY HOSPITAL ASSOCIATION, INC. d/b/a CALHOUN-LIBERTY HOSPITAL, and alleges:

## JURISDICTION

1. This is an action brought under Title VII of the Civil Rights Act of 1964, codified at 42 U.S.C. §2000e et seq. and under 42 U.S.C. §1981a. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1343 (civil rights claim jurisdiction) and 28 U.S.C. § 1367 (supplemental jurisdiction). This action is also brought under the First Amendment through 42 U.S.C. §1983, which authorizes actions to redress the deprivation, under color of state law, of rights, privileges, and immunities secured to the Plaintiff by

the Constitution and laws of the United States, and by 42 U.S.C. §1988 which authorizes the award of attorney's fees and costs to prevailing plaintiffs in actions brought pursuant to 42 U.S.C. §1983.

2. This is an action involving claims which are, individually, in excess of Seventy- Five Thousand Dollars.

## THE PARTIES

3. At all times pertinent hereto, Plaintiff, MELISSA PEDDIE, has been a resident of the State of Florida and was previously employed by Defendant. Plaintiff is a member of a protected class because she reported unlawful employment practices and has been retaliated against thereafter.

4. At all times pertinent hereto, Defendant, CALHOUN-LIBERTY HOSPITAL ASSOCIATION, INC. dba CALHOUN-LIBERTY HOSPITAL, has been organized and existing under the laws of the United States. At all times pertinent to this action, Defendant has been an "employer" as that term is used under the applicable laws identified above. Defendant is Plaintiff's previous employer as it relates to these claims.

## CONDITIONS PRECEDENT

5. Plaintiff has satisfied all conditions precedent to bringing this action.

## STATEMENT OF THE ULTIMATE FACTS

6. Plaintiff began her employment with Defendant in 2007 until 2009 as an ER Technician, and then again from May 2016 until October 2016 as an Interim Emergency Medical Services Director. Plaintiff is a former employee of Defendant and currently works as an EMS Director/Paramedic with Liberty County Board of County Commissioners in LIBERTY COUNTY, FLORIDA.

7. Plaintiff has been and continues to be subjected to disparate treatment, different terms and conditions of employment, and held to a different standard because of her prior claims against Defendant.

8. The disparate treatment and retaliation came at the hands of specifically but not limited to Defendant's Board of Directors Chair Mark Plummer ("Plummer"), Dr. Murray Baker, Sr. ("Baker"), Dr. Emmanuel Tanglao ("Tanglao") Risk Manager Janna Matautia and ER Nursing Supervisor Paige Tolley ("Tolley').

*Relevant Background*

9. Plaintiff filed a lawsuit against Defendant on or around 2009 for gender discrimination which settled on or around 2010.

10. From 2010 until present, Plaintiff has continued work in the Liberty County Emergency Medical Services industry, including specifically and without limitation Liberty County Board of County Commissioners.

11. On or about May 2016, Defendant's Risk Manager Cynthia Pettis ("Pettis") asked Plaintiff if she would be willing to take the position of Interim

3

Emergency Medical Services (EMS) Director with Defendant. Plaintiff interviewed and was hired by Defendant's CEO James Heitzenrater on or about May 2016. Despite Plaintiff's stellar work performance and the fact that she was being paid approximately half as much as every other male EMS Director in the history of Defendant, Defendant retaliated against her for her former lawsuit.

12. For example, on or around July 2016, Defendant's employees Marilyn Russell and Ruth Attaway told Pettis to get rid of Plaintiff because she had sued them seven (7) years prior.

13. Thereafter, Plaintiff told Defendant that she wanted to be the permanent EMS Director full-time, but she was denied the position despite her qualifications. Instead, Defendant hired Keith Maddox ("Maddox") and paid him twice the amount it paid Plaintiff. Despite Plaintiff offering to stay at a lesser salary than Maddox, Defendant denied Plaintiff the permanent EMS Director position on or around October 2016 in retaliation for her reporting of gender discrimination and subsequent lawsuit which was settled in 2010.

*Facts Pertaining to the Current Cause of Action*

14. Plaintiff was, and continues to be, employed by Liberty County as the Director of EMS/Paramedic.

15. On or about July 16, 2020, Plaintiff was the on-duty driver during a medical call for a critical care patient. The charge medic, a paramedic, and an R.N.

were in the back of the ambulance with the patient when they arrived at Plaintiff's former employer, Defendant, for care and treatment of the patient.

16. Upon arrival, the receiving doctor, Dr. Tanglao, walked slowly back to the truck. The charge medic had been performing chest compressions on the patient who was not stable. The doctor asked why the patient was not intubated, to which the charge medic responded that it was not protocol to intubate the patient. Dr. Tanglao told the charge medic to stop all revival attempts. With the patient's family watching, the ER doctor and staff refused to touch or provide care to the patient. The doctor walked back inside the hospital and sent staff back out to place a sheet over the patient and had the charge medic, paramedic, and R.N. roll the patient into the hospital.

17. On or about July 16, 2020, Plaintiff verbally reported on the telephone to Defendant's Nursing Supervisor Tolley that the ER doctor and staff did not provide proper patient care. She reported that they should have done more for the patient; at the very least they should have examined the patient and performed chest compressions. She further reported that Defendant did not utilize the proper radios for communicating with EMS technicians. She reported that Defendant uses VHF radios instead of UHF radios. Because Defendant does not have the proper radio system, Plaintiff and other EMS technicians have to use their cell phones to make contact with the hospital, which poses a sanitation and safety hazard as well as

delays. She told Tolley that she would report this to the Agency for Healthcare Administration (AHCA). Tolley told her to go ahead and report it.

18. On or about July 18, 2020, Plaintiff verbally reported over the telephone to AHCA everything she had reported to Tolley, as reflected in paragraph 17 above. AHCA filed a report and began conducting an investigation. Plaintiff's reporting constituted protected First Amendment disclosures, as Defendant's actions constituted violations of specifically and without limitation AHCA Rule 59A-3.254 (Patient Rights and Care). AHCA is granted rulemaking authority under § 395.003, § 395.1055, Florida Statutes (2020). Reporting the actions of the Defendant was not part of Plaintiff's normal job duties with Defendant and she was not an employee of the Defendant at the time she made the disclosures that were of serious public concern, considering that the Defendant, through its final decisionmaker regarding the medical care of the patient referenced above, failed or refused to render lifesaving care to a patient brought by Plaintiff and others for care.

19. Defendant almost immediately retaliated against Plaintiff on or around July 2020, when its employee Baker called her Supervisor, Medical Director Carol Sutton ("Sutton") and stated that Sutton should fire Plaintiff. Defendant told Sutton that Plaintiff was going to lose her paramedic license. Defendant also told Dr. Sutton that Plaintiff would cause her to be in the middle of a lawsuit.

20. On or around July 2020, Plummer retaliated against Plaintiff when he contacted (upon information and belief over the telephone) Liberty County Board Commissioner Jim Johnson ("Johnson"), to falsely tell him that Plaintiff was at fault for a patient dying (in reference to the incident mentioned above in paragraph 16 above), and that she would cause him to be at risk of a lawsuit.

21. By way of further example, Defendant continued in its retaliation against Plaintiff when it filed an unfounded complaint against her on or around August 2020 with the Florida Department of Health (Emergency Medical Services Section), in an attempt to have Plaintiff's license revoked.

22. This unfounded complaint was suspect for several reasons: (1) the physician who reported the complaint (Baker) was not present at the time that Plaintiff committed the alleged lack of care; (2) Baker was also the doctor who called Plaintiff's boss in an attempt to have her fired; (3) Plaintiff was the driver at the time of the incident, and was not in the back of the ambulance with the patient; (4) the charge medic, not Plaintiff, made the final call on patient care; (5) Defendant did not make a complaint against the charge medic; and (6) Defendant did not make a complaint against the paramedic or R.N. who were also in the ambulance during that incident.

23. On or around September 2020, Defendant continued in its retaliation against Plaintiff when it filed another unfounded complaint against her with the

Florida Department of Health (Emergency Medical Services Section), in another attempt to have Plaintiff's license revoked. This unfounded complaint was suspect because, once again, (1) Plaintiff was the driver at the time of the incident, and was not in the back of the ambulance with the patient; (2) the charge medic makes the final calls on patient care; and (3) Defendant did not make a complaint against the charge medic.

24. Plaintiff was placed under investigation by the Bureau of EMS Probable Cause Board effective immediately. Plaintiff was not placed under any restrictions but remained under investigation for over eight (8) months which seriously affected her mental health as she was in grave fear daily of losing her license.

25. Prior to Defendant's retaliatory actions, Plaintiff has never had a complaint lodged against her with the Florida Department of Health (Emergency Medical Services Section) in her twenty-plus year career.

26. On September 10, 2020 Plaintiff wrote a letter to the Liberty County Board of County Commissioners addressing her concerns about the ongoing retaliation by the Defendant.

27. On or about October 2020, at Defendant's new groundbreaking ceremony, Defendant's Board of Directors Chairman Plummer, discussed the possibility of Defendant taking over Liberty County's EMS Services with Liberty

County Board Commissioner Brown and Clerk of Court Kathy Brown. Plummer asked Brown to put a Liberty-Calhoun EMS takeover on the agenda for the Liberty County Board of County Commissioners November 2020 meeting.

28. This posed a risk to Plaintiff as Defendant had a vendetta against her (as described by Defendant's retaliatory actions described above), and she was afraid that her current job was in jeopardy. Plummer also talked about Plaintiff with Brown during this same conversation, and upon information and belief, continued to falsely claim that Plaintiff was responsible for a patient dying. This was Defendant's way of continuing the retaliation against her through her current employer, specifically through Liberty County Board Commissioner Brown.

29. Liberty County Board Commissioner Brown was in support of Defendant's takeover, based on the allegations against her by Defendant and its employees/agents, and was specifically targeting Plaintiff.

30. On March 16, 2021, Plaintiff wrote a letter to the Liberty County Board of County Commissioners and Clerk of Court Daniel Stanley addressing her concerns about the continued harassment from Liberty County Board Commissioner Brown. Plaintiff stated that she felt the harassment and abuse was retaliatory due to the complaint she filed against Defendant with AHCA in July 2020. The continuous harassment is interfering with Plaintiff's ability to efficiently perform her job duties. Plaintiff is also entitled to a work place free of harassment and hostility.

31. After this letter, the Krizner Group opened up an investigation into Plaintiff's claims. The Group found Liberty County Board Commissioner Brown at fault and ordered him to cease all harassment against Plaintiff.

32. In May 2021, Plaintiff was no longer under investigation by the Bureau of EMS Probable Cause Board. The Bureau of EMS Probable Cause Board found the complaints against Plaintiff to be unfounded.

33. In late 2021, Defendant merged with Tallahassee Memorial Hospital and is now in the TMH network, however, Plaintiff is in constant fear for her job despite having two (2) years until retirement due to Defendant's retaliatory actions, which are likely to continue.

34. Defendant's actions have caused Plaintiff extreme stress and tension, and has affected, and continues to affect, her relationship with her current employer.

35. Plaintiff has retained the undersigned to represent her interests in this cause and is obligated to pay a fee for these services. Defendant should be made to pay said fee under the statutes referenced above.

## COUNT I
## RETALIATION

36. Paragraphs 1 through 35 are re-alleged incorporated herein by reference.

37. This is an action against Defendant for unlawful retaliation after Plaintiff reported unlawful employment practices adversely affecting her under 42 U.S.C. § 2000e et seq. and 42 U.S.C. § 1981a.

38. Defendant is an employer as that term is used under the applicable statutes referenced above.

39. The foregoing unlawful actions by Defendant were purposeful.

40. Plaintiff voiced opposition to unlawful employment practices during her employment with Defendant and has been the victim of retaliation thereafter.

41. The events set forth herein have led, at least in part, to adverse actions against Plaintiff.

42. Plaintiff is a member of a protected class because she reported unlawful employment practices and has been the victim of retaliation thereafter. There is thus a causal connection between the reporting of the unlawful employment practices and the adverse employment action taken thereafter.

43. As a direct and proximate result of the foregoing unlawful acts and omissions, Plaintiff has suffered mental anguish, emotional distress, expense, loss of benefits, embarrassment, humiliation, damage to reputation, illness, lost wages, lost opportunities, loss of capacity for the enjoyment of life, and other tangible and

intangible damages. These damages are continuing and are permanent. Plaintiff is entitled to injunctive/equitable relief.

## COUNT I
## FIRST AMENDMENT RETALIATION

44. Paragraphs 1 through 35 above are incorporated herein by reference. This count is pled in the alternative.

45. This count sets forth a claim against Defendant for the violation of Plaintiff's First Amendment rights, brought through 42 U.S.C. §1983.

46. Plaintiff engaged in constitutionally protected speech by reporting matters of public concern, i.e., safety practices with a physician with Defendant, to AHCA on July 18, 2020. Plaintiff reported that Defendant's ER doctor and staff did not provide proper patient care, that Defendant's staff should have done more for the patient, at the very least examined the patient and performed chest compressions, and that Defendant did not utilize the proper radios for communicating with EMS technicians. Plaintiff reported that Defendant uses VHF radios instead of UHF radios and due to this, Plaintiff and other EMS technicians have to use their cell phones to make contact with the hospital, which poses a sanitation and safety hazard as well as delays.

47. Plaintiff's reporting constituted protected First Amendment disclosures, as Defendant's actions constituted violations of specifically and without

limitation AHCA Rule 59A-3.254 (Patient Rights and Care). AHCA is granted rule making authority under § 395.003, §395.1055, Florida Statutes (2020). Plaintiff's statements and recordings were on matters of public concern, as outlined in part above.

48. Defendant's actions, including without limitation calling Plaintiff's Supervisor, Sutton, in an attempt to get Plaintiff terminated, falsely telling Liberty County Commissioner Johnson that Plaintiff was responsible for a patient dying, filing two unfounded complaints against Plaintiff with the Florida Department of Health (Emergency Medical Services Section) in an attempt to get Plaintiff's license revoked and attempting to take over Liberty County's EMS Services putting Plaintiff's job at risk. These are the type of retaliatory actions that would deter a person of ordinary sensibilities from exercising First Amendment rights to speak/express.

49. The above actions were taken in violation of Plaintiff's clearly established rights under the First Amendment to the United States Constitution to be free from retaliation motivated by the exercise of his First Amendment speech/expression rights.

50. Defendant's Board of Directors including but not limited to, Plummer, Dr. Baker and Dr. Tanglao were all final policymakers regarding the actions alleged herein and took the actions against Plaintiff alleged above.

51. As a direct and proximate cause of those actions, for which the Defendant is responsible, Plaintiff has been damaged, which damages include: mental anguish, loss of capacity for the enjoyment of life, embarrassment, humiliation, economic damages, and loss of reputation. These damages have occurred at present, in the past and will most likely occur in the future.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendant for the following:

(a) that process issue and this Court take jurisdiction over this case;

(b) that this Court grant equitable relief against Defendant under the applicable counts set forth above, mandating Defendant's obedience to the laws enumerated herein and providing other equitable relief to Plaintiff;

(c) enter judgment against Defendant and for Plaintiff awarding all legally-available general and compensatory damages and economic loss to Plaintiff from Defendant for Defendant's violations of law enumerated herein;

(d) enter judgment against Defendant and for Plaintiff permanently enjoining Defendant from future violations of law enumerated herein;

    (e)    enter judgment against Defendant and for Plaintiff awarding Plaintiff attorney's fees and costs;

    (f)    award Plaintiff interest where appropriate; and

    (g)    grant such other further relief as being just and proper under the circumstances.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury on all issues herein that are so triable.

        Respectfully submitted,

        /s/ Marie A. Mattox
        Marie A. Mattox [FBN 0739685]
        MARIE A. MATTOX, P.A.
        203 North Gadsden Street
        Tallahassee, FL 32301
        Telephone:  (850) 383-4800
        Facsimile:   (850) 383-4801

        ATTORNEYS FOR PLAINTIFF